UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MARGARET L. WELCH, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 2:23CV11 HEA |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

### OPINION, MEMORANDUM AND ORDER

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for supplemental security income under Title XVI of the Social Security Act. An Administrative Law Judge ("ALJ") found that, despite Plaintiff's impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform light work.

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary. For the following reasons, the decision of the Commissioner will be reversed and remanded for further proceedings.

Procedural History

Plaintiff filed her application for benefits on February 4, 2021. (Tr. 194-99). She claimed she is unable to work due to due to diabetes, chronic migraines,

depression, and anxiety (Tr. 216). She was 31 years old at her alleged onset of disability date. (Tr. 194.) The ALJ denied plaintiff's claim and the Appeals Council denied his claim for review. (Tr. 25, 1–6.) Thus, the ALJ's decision stands as the final decision of the Commissioner. See 20 C.F.R. § 416.1481.

In this action, Plaintiff first argues that the ALJ did not properly analyze the opinions of psychiatrist Dr. Goldman nor internist Dr. Kerkemeyer under 20 C.F.R. § 404.1520. Next, Plaintiff argues more broadly that the RFC is not supported by substantial evidence.

## The ALJ's Determination

Initially, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 4, 202, the alleged onset date. The ALJ concluded that Plaintiff has the following severe impairments: diabetes, chronic migraines, depression, and anxiety (Tr. 14-15). The ALJ did not find that these impairments individually or any combination of these impairments met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-17).

As to Plaintiff's RFC, the ALJ stated:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she cannot climb ladders, ropes, or scaffolds but can frequently climb ramps and stairs. The claimant can perform occasional balancing on narrow, slippery, or erratically moving surfaces and she can engage in frequent stooping. She can perform tasks requiring occasional operation of foot controls bilaterally and can engage in frequent

2

>fine and gross manipulation. The claimant cannot work at unprotected heights or around moving mechanical parts or other such hazards nor can she perform work involving vibration, such as would be required by the operation of heavy equipment drills, jackhammers, or other such devices. She can have no concentrated exposure to extreme heat, cold, humidity, wetness, dust, or fumes. The claimant can maintain the concentration required to perform simple routine tasks, remember work procedures, and make simple work-related decisions. She cannot work at a fast pace such as an assembly line but can stay on task and meet reasonable production requirements in an environment that allows her to maintain a flexible and goal-oriented pace. She is further limited to work that requires only occasional changes in the work setting which are introduced gradually, and she can have occasional interaction with co-workers, supervisors, and the public.

(Tr. 17-18.) The ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy. (Tr. 24.) Accordingly, the ALJ determined that Plaintiff was not disabled, as defined by the Social Security Act, from February 4, 2021 through the date of the decision.

Applicable Law

Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," requires a more scrutinizing analysis than "than a mere search of the record

3

for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Sec'y of Health & Hum. Servs.*, 957 F.2d 581, 585–86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d

4

1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); see also *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted—or can be expected to last—for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists ... in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation

5

process outlined in the regulations. 20 C.F.R. § 416.920; see *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; see 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); see also Id. § (b)(1)–(6) (enumerating the abilities and aptitudes of basic work activities); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

6

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iii), 416.920(d); see also *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Wright v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); see also 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence that the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."

7

20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. See *id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do given the claimant's RFC, age, education, and work experience. See *Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000).

The Commissioner must prove both that the claimant's RFC will allow the claimant to make an adjustment to other work and that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

20 C.F.R. section 416.920a explains the evaluation process for mental impairments. The first step requires that the Commissioner "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. See 20 C.F.R. §416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. § 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. See 20 C.F.R. §416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. See *id*. Next, the Commissioner must determine the severity of the impairment based on those ratings. See 20 C.F.R. § 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. See 20 C.F.R. § 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. See *id*. If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. See 20 C.F.R. § 416.920a(c)(3).

## Discussion

9

As noted, Plaintiff challenges the ALJ's evaluation of the medical opinion evidence and the ALJ's RFC determination. Plaintiff first argues that the ALJ did not properly follow the dictates of 20 C.F.R. § 404.1520c in evaluating the medical opinion of Dr. Goldman.

Dr. Goldman provided a Medical Source Statement indicating the following limitations being significant: he opined that because of her Social Anxiety Disorder, Generalized Anxiety Disorder, and Bipolar Disorder Plaintiff would have a moderate impairment in the ability to understand, remember, and carry out simple instructions, and a moderate impairment in the ability to make judgments on simple work-related decisions. He assessed a marked impairment to understand and remember complex instructions. (TR 845) Plaintiff has extreme limitation on the ability to make judgments on complex work-related decisions. He supported these limitations by stating "Plaintiff's decreased moods adversely impact her ability to remember, focus and concentrate. Her focus and concentration are also adversely impacted by her anxiety disorder. Due to her anxiety, she questions herself and has difficulty with judgment and decision making. Due to her Bipolar Disorder, patient has episodes of irritability and anger that adversely impact her focus and concentration, as well as her ability to interact with others." (TR 846)

Dr. Goldman opined Plaintiff had marked impairment to interact appropriately with the public, supervisors, and co-workers and an extreme

10

limitation to respond appropriately to usual work situations and changes to routine work setting. (*Id*.)  "Due to patient's mood disorder and anxiety disorder, patient becomes angry if she feels she is being provoked. This adversely impacts her ability to interact with others especially the public, supervisors as well as co-workers. Patient socially withdraws due to anxiety disorder. Patient avoids crowded places and social interactions. Plaintiff suffers from Diabetes Mellitus Type I/Insulin Dependent." (*Id*.)

He further opined that Plaintiffs Migraine Headaches are exacerbated by social interactions and stressful situations. He also stated that because of her Diabetes Mellitus Type I/Insulin Dependent she experienced episodes of both hypoglycemia and hyperglycemia. The hyperglycemic episodes adversely impact her memory, focus, concentration, and energy. She has irritability during both types of episodes. (*Id*.)

Dr. Goldman also stated that Plaintiff would have good days and bad days, would be absent four or more days per month and be off task 25% of the time. In additions, she would need unscheduled breaks 2 - 3 times a day of 15 through 30 minutes duration due to panic attacks and anxiety in addition to migraine headaches and hyperglycemic episodes. (TR 847).

Plaintiff claims that the ALJ failed to develop the record regarding Dr. Goldman's "abnormal" findings when she relied on her conclusion that the medical

11

record establishes that Plaintiff's mental status examinations were generally normal other than a few abnormalities. The ALJ stated that the record did not define what constituted "abnormal," but she did not attempt to discern what these abnormalities were nor how they would affect Plaintiff's ability to function in the workplace. *Williams v. Saul,* Case No. 2:19-CV-00088-RLW, slip op at page 19 (E.D.Mo. March 31, 2021) citing *Stormo v. Barnhart*, 377 F. 3d 801,806 (81h Cir. 2004) and *Eichelberger v. Barnhart*, 390 F. 3d 584, 591 (8th Cir. 2004).

Plaintiff argues that Goldman's opinion was consistent with and supported by medical evidence, and that the ALJ should have given the opinion more weight.

Likewise, Plaintiff argues the ALJ failed to properly consider Dr. Kerkemeyer's opinion. The ALJ states that his opinion is generally inconsistent with the treatment records. However, as Plaintiff points out, the citations to the record do not support this conclusion. There is nothing in the record to establish Plaintiff's diabetic blood sugar issues were indeed resolved with her insulin pump. She continued to experience nausea and vomiting from her diabetes. (Tr. 401). Although her A1C has improved with the pump, the sensor data showed big spikes after meals and low blood sugars before meals and at bedtime. This evidence supports Dr. Kerkemeyer's opinion.

A "medical opinion" is a statement from a medical source about what an individual can still do despite her impairments, and it includes limitations or

restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work. 20 C.F.R. § 416.913(a)(2). Under the revised Social Security regulations, the agency will not give any specific evidentiary weight to any prior medical findings, including those from the claimant's treating physicians. 20 C.F.R. § 416.920c(b)(2). Instead, the ALJ must assess the persuasiveness of all medical opinions and prior administrative medical findings using a number of factors, including 1) the supportability of the opinion with objective medical evidence and explanations; 2) the consistency of the opinion with evidence from other medical and nonmedical sources; 3) the relationship of the provider to the claimant, including the length, nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors, including the source's familiarity with the Social Security guidelines. 20 C.F.R. § 404.1520c.

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [she] considered the supportability and consistency factors ... in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2). An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19, 20 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding when ALJ discredited

13

physician's opinion without discussing factors contemplated in Regulation, as failure to comply with opinion-evaluation Regulation was legal error)). ALJs need not explain in their decision how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff argues that the ALJ's reasoning does not satisfy the requirements of the regulations and provides little understanding of why the ALJ found Drs. Goldman and Kerkemeyer's opinions of little value. This court agrees.

An ALJ's mere reference to the words "support" and "consistent" in her treatment of a medical opinion is "insufficient to satisfy the Regulation's requirement that the ALJ 'explain' how she considered these factors in determining the persuasiveness of a medical opinion." *Bibb v. Kijakazi*, No. 2:21-CV-70-ACL, 2023 WL 2707439, at *1–8 (E.D. Mo. Mar. 30, 2023);  *Martini v. Kijakazi*, No. 4:20-CV-1711-CDP, 2022 WL 705528, at *4 (E.D. Mo. Mar. 9, 2022). The ALJ's explanation need not be exhaustive, but boilerplate or "blanket statements" do not satisfy the requirement. *Lucus*, 960 F.3d at 1069 (quoting *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 554 (8th Cir. 2018)). "No matter the adequacy of the ALJ's general summary of the evidence of record, she nevertheless [must] abide by the Regulation's mandate to 'explain' the supportability [and consistency] of [a medical] opinion in view of such evidence." *Martini*, 2022 WL 705528 at *5; see also *Pipkins v. Kijakazi*, No. 1:20-CV-161-CDP, 2022 WL 218898 (E.D. Mo. Jan.

14

25, 2022) (finding that the ALJ's failure to "explain" and "articulate" the supportability and consistency of medical opinion evidence was reversible error even when the ALJ elsewhere adequately summarized the evidence of record, and it supported the RFC determination). The Regulation requires "more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions." *Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022). The ALJ's evaluation of Drs. Goldman and Kerkemeyer's opinions fails to adequately address the factors of supportability and consistency. First, the ALJ summarizes the opinions and findings, which may result in a finding of disability. Then, she dismisses the opinion as unpersuasive because "[Plaintiff's] examinations were generally normal." The ALJ does not discuss what "generally normal" means in this context, which findings she considered to be generally normal, or how generally normal findings in one area undermines the findings of "abnormal."

      Plaintiff's treatment history reveals instances of when Plaintiff displayed abnormal behavior, activity level, affect, insight, and judgment. These findings of abnormal behaviors tend to show that the opinions are supported by and consistent with other medical evidence. Given these other records, the ALJ's characterization

15

of "generally normal" findings is vague and unclear, which does not meet the Regulation's requirement to specifically explain how opinions are supported by other medical evidence.

In looking at Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ dismissed Dr. Goldman's findings because she thought that Plaintiff's treatment record was too limited to support more than a mild limitation. Overall, the ALJ's evaluation did not make her reasoning sufficiently specific enough to make it clear to any subsequent reviewers. *Lucus*, 960 F.3d at 1069.

A reviewing court cannot fill the gaps in an ALJ's opinion, nor offer its own reasoning and analysis to satisfy the Regulation's requirement. See *Laramie*, 2023 WL 2610215, at *7; see also *Hirner*, 2022 WL 3153720, at *9 ("Section 416.920c(b) requires more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions."). Nor was this error harmless. If the ALJ gave Drs. Goldman and Kerkemeyer's opinions greater weight, then the RFC may have had additional restrictions. See *Lucus*, 960 F.3d at 1069. Accordingly, the court finds that the ALJ erred in analyzing the persuasiveness of the medical opinion evidence. This error affected the ALJ's RFC determination, which renders it without the support of substantial evidence.

16

Conclusion

For the reasons discussed above, the Commissioner's decision is not based on substantial evidence on the record as a whole, and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Opinion, Memorandum, and Order. On remand, the ALJ must properly evaluate the persuasiveness of the medical opinion evidence and formulate an RFC supported by the substantial evidence.

Dated this 13th day of February 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE